IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE D., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 18 C 6560 |
| | ) |
| ANDREW M. SAUL, | ) Magistrate Judge Finnegan |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff Nicole D. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record, the Court agrees with Plaintiff that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff applied for DIB on September 27, 2014, alleging disability since October 6, 2013 due to major depression, anxiety, panic attacks, post-traumatic stress disorder ("PTSD"), and problems with activities of daily living, social functioning, concentration, memory, attention, and focus. (R. 153, 185). Born in February 1978, Plaintiff was 36 years old at the time of the application and was considered a younger individual through her date last insured ("DLI"), June 30, 2015. (R. 153, 182). She has a high school diploma and lives with her husband. (R. 40, 42, 186). From July 2000 to June 2003, Plaintiff was employed as a warehouse operations worker for an electrical company. She then spent

three years working for the admitting department of a hospital, followed by two years as a front desk secretary at a neurosurgery office. (R. 51, 187). There was a gap in Plaintiff's employment from March 2008 until July 2012 when she started doing data entry for a flooring company. Plaintiff next went to work for an electrical company entering customer data in November 2012, but she quit in October 2013 due to panic attacks and problems with remembering how to do the job. (R. 48-49, 51-52, 185, 187).

The Social Security Administration denied Plaintiff's applications initially on March 3, 2015, and again upon reconsideration on January 26, 2016. (R. 60-88, 91-101). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Roxanne J. Kelsey (the "ALJ") on June 29, 2017. (R. 34). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Stephen Sprauer (the "VE"). (R. 36-56). On October 4, 2017, the ALJ found that Plaintiff's depressive disorder, anxiety disorder/PTSD, attention deficit disorder/attention deficit hyperactivity disorder ("ADD"/"ADHD"), degenerative disc disease of the lumbar spine with ongoing problems and fusion, and obesity are severe impairments, but they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-19). After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff was not disabled at any time from her October 6, 2013 alleged onset date through her June 30, 2015 DLI because she retained the residual functional capacity ("RFC") to perform a significant number of jobs available in the national economy, including marker and routing clerk. (R. 19-29). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

2

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in finding that her mental impairments do not meet or equal listing level severity at step three of the analysis; (2) improperly rejected the opinions of her treating mental health professionals, Fareha Malik, M.D., Caesar Madrigal, LCSW; Taras W. Didenko, M.D., and Kelly Swann, LCPC, and (3) erred in evaluating her subjective statements regarding her symptoms. For reasons discussed in this opinion, the Court agrees with Plaintiff that the case must be remanded for further consideration of the opinions from Dr. Malik, Mr. Madrigal, and Dr. Didenko.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA"). In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not

3

disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.    Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that she is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [s]he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one

4

through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C. Analysis**

    **1. Opinion Evidence**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in giving little weight to the opinions of her treating mental health physicians. A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2); *see Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila*, 573 F.3d at 515.

5

### a. Dr. Malik and Mr. Madrigal

Psychiatrist Fareha Malik, M.D., submitted a Mental Disorders Report on December 16, 2015 stating that Plaintiff's bipolar disorder, panic disorder, social anxiety disorder, ADHD, and generalized anxiety disorder are severe enough to meet or equal Listings 12.04 and 12.06. (R. 594, 596-97). Specifically, Plaintiff has marked restriction of activities of daily living; marked to extreme difficulties in maintaining social functioning; marked to extreme difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. (R. 596-97). Dr. Malik identified numerous situations that trigger Plaintiff's symptoms, including encountering other people or groups of people; coping with supervisors, co-workers, and the public; dealing with stress or productivity demands; and leaving the home environment. (R. 594). Dr. Malik characterized Plaintiff's prognosis as poor given her poor response to treatment. (R. 595). This assessment largely mirrors a June 9, 2015 report from Caesar Madrigal, LCSW, who met with Plaintiff once a week for psychotherapy sessions. (R. 502-05, 594).

In giving both of these opinions little weight, the ALJ stated generally that the "level of limitation is not seen in the treatment records," and cited to three exhibits totaling some 118 pages. (R. 26) (citing Exhibit 3F (R. 349-416), Exhibit 8F (R. 598-615), and Exhibit 11F (R. 623-55)). Elsewhere in the opinion the ALJ discussed Dr. Malik's treatment notes in more detail, but she focused on those showing improvement in Plaintiff's functioning without adequately explaining why she discounted contrary findings. (R. 21-24).

Records show that Plaintiff was hospitalized on October 2, 2013 due to depression and suicidal thoughts. She reported being treated for depression for many years but said she had gradually stopped taking Prozac, Abilify, and Wellbutrin because she was trying

6

to get pregnant. (R. 21, 913). Her symptoms included anxiety, panic attacks, difficulty sleeping, poor concentration, low energy, and racing thoughts. (R. 913). On examination, Plaintiff exhibited a sad and anxious mood, fair insight and judgment, fair attention/concentration, and fair memory. (R. 21, 914). Doctors diagnosed major depression, recurrent, severe and put her on Prozac, Lexapro and Seroquel. (R. 915). Plaintiff was discharged five days later on October 7, 2013. She was "doing well" at that time with "[n]o more depression" and "[n]o suicidal thoughts." (R. 21, 421). Over the next few months, Plaintiff continued to do well with largely normal examinations despite diagnoses of major depressive disorder, PTSD and anxiety disorder. (R. 21, 852, 855, 856).

On March 7, 2014, Plaintiff presented to Behavioral Health Care Associates with a tearful and sad affect and depressed mood. (R. 22, 850). By May 2014, Plaintiff was not doing well. On May 2 she exhibited a tearful and sad affect, depressed mood, and circumstantial thought process, and she was easily distracted. (R. 849). On May 21, 2014, she was tearful, sad, anxious, depressed, irritable and easily distracted. The doctor adjusted her medications since she had not been responding well to her antidepressants. (R. 22, 861). Shortly thereafter, on July 2, 2014, Plaintiff started treating with Dr. Malik. She reported feeling depressed every day for weeks or months at a time, and complained of anhedonia, irritability, low self-esteem, feelings of guilt, helplessness, hopelessness, low energy, difficulty focusing, and passive suicidal thoughts. She also told Dr. Malik that she got overwhelmed easily, which made her unable to stay on task and maintain focus and attention. (R. 349). On exam, Plaintiff had a depressed and anxious mood, below normal attention and concentration, fair impulse control, and fair judgment and insight.

7

(R. 351). Dr. Malik diagnosed major depressive disorder, recurrent, severe; generalized anxiety disorder; rule out bipolar disorder; and rule out ADHD, and adjusted Plaintiff's medication. (R. 351-52).

Plaintiff saw Dr. Malik 17 more times through December 9, 2014. She showed no improvement throughout July and August, with ongoing anxiety, depression, panic attacks, mood swings, lack of energy and motivation, feelings of helplessness and hopelessness, and below normal concentration. (R. 354-55, 357-59, 362, 363, 365-67, 373-74). Plaintiff reported feeling better on September 5, 2014, but her panic attacks, anxiety, depression, and concentration problems returned on September 11 and 17, 2014, and Dr. Malik diagnosed Plaintiff with bipolar disorder. (R. 379, 381-82, 385-86). At the end of September, Plaintiff was feeling better but this improvement was once again short-lived. (R. 389-90). In October 2014, her panic attacks, anxiety, and depression returned, and she started complaining of difficulties with disorganization, forgetfulness, inattention and lack of focus. (R. 393-94, 397-98, 401-02, 404-05). On October 28, 2014, Dr. Malik added panic disorder, PTSD and ADHD to Plaintiff's list of diagnoses. (R. 406).

Following another period of some improvement in November and December 2014, Plaintiff once again complained of panic attacks and worsening anxiety on January 22, 2015. (R. 409-10, 413-14, 571-72, 575-76, 579-80). Her problems with depression, panic attacks, anxiety, mood swings, disorganization, racing thoughts, low energy, and anhedonia continued through December 2015. Over the course of 19 visits with Dr. Malik, Plaintiff reported a worsening of these symptoms on 12 occasions. (R. 515-16, 519-20, 526-28, 538-40, 547-48, 551-52, 555-56, 563-64, 567-68, 559-60, 641-46). Even when Plaintiff was ostensibly doing better at certain visits, she still variously exhibited a

8

depressed and anxious mood, mood swings, low energy, lack of motivation, anhedonia, anger outbursts, and inadequate attention and concentration. (R. 511-12, 523-24, 531-32, 534-36, 542-44, 638-39).

On January 6, 2016, Plaintiff told Dr. Malik that she was feeling better with no panic attacks since December 16, 2015. She was still depressed and anxious but her mood was stable. (R. 635-36). Plaintiff's improvement continued until her last appointment with Dr. Malik on April 4, 2016, when the anxiety, panic attacks, depression, low energy, lack of motivation, and anhedonia returned. (R. 623-26, 629, 634). On exam Plaintiff was depressed, anxious, agitated, and crying uncontrollably. (R. 624).

The ALJ concluded from these records that there was "little mention of ongoing symptomatology to the degree alleged by" Dr. Malik and Mr. Madrigal for the period October 6, 2013 through the June 30, 2015 DLI. (R. 26). It is not at all clear how the ALJ made this determination. The only specific example the ALJ provided was a February 8, 2016 treatment note from Dr. Malik stating Plaintiff did not have agoraphobia. (R. 26, R. 631). The ALJ failed to explain the significance of this evidence, or articulate how it demonstrates greater functioning than the treating physicians set forth in their opinions, particularly in light of Plaintiff's numerous other diagnoses.

The ALJ also placed too much emphasis on records documenting some improvement in Plaintiff's symptoms without fairly acknowledging her many relapses. Though Plaintiff described feeling better at some visits, her symptoms of anxiety and depression routinely recurred, along with complaints that the medications were not helping. This is consistent with bipolar disorder, which is "by nature episodic and admits to regular fluctuations even under proper treatment." *Jelinek v. Astrue*, 662 F.3d 805,

9

814 (7th Cir. 2011). In other words, a claimant may have severe limitations despite being able to behave "pretty normally" during office visits. *Kangail v.* Barnhart, 454 F.3d 627, 630 (7th Cir. 2006). The ALJ's analysis suggests she did not understand this aspect of Plaintiff's mental illness and may have "cherry-picked" from the mixed results to support a denial of benefits. (R. 24) (stressing, for example, that the month after Dr. Malik prepared her opinion, Plaintiff reported feeling better with improvement in her panic attacks). *See also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Notably, the Seventh Circuit has made clear that a person cannot hold down a full-time job if "half the time she is well enough that she could work, and half the time she is not." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).

The only other rationale the ALJ gave for rejecting Dr. Malik's December 2015 opinion in particular is that she prepared it "well after [Plaintiff's] date last insured" of June 30, 2015. (R. 24). To the extent the ALJ is suggesting that the opinion is stale, the Court disagrees. Dr. Malik started treating Plaintiff on July 3, 2014, and had last seen her on December 16, 2015, the date of the opinion. (R. 594). Dr. Malik clearly had a longitudinal picture of Plaintiff's functioning during the relevant time period and her opinion fairly reflects that assessment.

Viewing the record as a whole, the ALJ failed to build a logical bridge between the medical records and the decision to afford the opinions from Dr. Malik and Mr. Madrigal only little weight. Dr. Malik is a psychiatric specialist who saw Plaintiff nearly 40 times between July 2014 and April 4, 2016, and was intimately familiar with Plaintiff's mental impairments. Plaintiff met with Mr. Madrigal even more frequently (once a week) and he had a similar assessment of her functioning. Though the ALJ is not required to give

10

controlling or great weight to these opinions, she must better articulate her reasons for discounting them. Her failure to do so requires that the case be remanded for further evaluation.

### b. Dr. Didenko

Remand is also necessary so the ALJ can better explain why she afforded little weight to the opinion of psychiatrist Taras W. Didenko, M.D., who started treating Plaintiff after Dr. Malik. On February 10, 2017, Dr. Didenko completed a mental RFC assessment of Plaintiff indicating that she would be off task more than 30% of the workday, absent more than 6 days per month, and unable to perform work on a sustained, consistent basis for 40% of the workday. (R. 618). In rejecting this opinion, the ALJ stressed that it was completed after the June 30, 2015 DLI, and said it was "unclear as to what period Dr. Didenko's assessment applies or when these limitations began." (R. 26). Yet the opinion clearly states that Plaintiff's symptoms have been present since 2013/2014. (R. 616). The limitations set forth in the opinion are also consistent with those articulated by Dr. Malik in considering that same time period. On remand, the ALJ should address these issues and properly explain the weight assigned to Dr. Didenko's opinion.

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments. However, after the ALJ reconsiders the opinions from Dr. Malik, Mr. Madrigal, and Dr. Didenko, she should also reassess whether Plaintiff meets or equals a listed impairment at step three of the sequential analysis. As the Commissioner concedes, if those opinions are fully credited, "then [P]laintiff would [be] found disabled at step three." (Doc. 24, at 8). The ALJ should also take the opportunity on remand to consider all of

11

the medical and testimonial evidence of record, obtain updated information on Plaintiff's condition and activities of daily living, and secure new VE testimony as appropriate.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [13] is granted, and the Commissioner's motion for summary judgment [23] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: May 13, 2020

_____
SHEILA FINNEGAN
United States Magistrate Judge